UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
DANIEL BRADLEY,                         )
                    Plaintiff           )
                                        )
v.                                      )        CIVIL ACTION NO. 3:18-CV-30039
                                        )
CHRISTIAN CICERO, JOSEPH DUNN,          )
and DANIEL MOYNAHAN,                    )
                    Defendants          )
_____)

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW**

STATEMENT OF FACTS

On August 26, 2015, at approximately 2:00 AM, the Plaintiff was traveling in a motor vehicle on Northampton Avenue in the City of Springfield, Massachusetts. The Plaintiff was seated in the rear of the vehicle on the passenger side. The vehicle was being operated by Daeshavana Robinson ("Ms. Robinson"). Barbara Murphy was seated in the front passenger seat. Savon Tucker was seated in the rear of the vehicle on the driver's side to the left of the Plaintiff.

After coming to a complete stop at the intersection of Northampton Avenue and King Street, Ms. Robinson took a right hand turn onto King Street. Shortly thereafter, the Defendant, Christian Cicero ("Officer Cicero'), and the Defendant, Joseph Dunn ("Officer Dunn"), who were traveling behind Ms. Robinson's vehicle in a fully marked police cruiser, activated their cruiser's emergency lights, signaling for Ms. Robinson to pull over. Officers Cicero and Dunn claimed that the vehicle failed to stop for the stop sign. Ms. Robinson promptly pulled her vehicle to the side of the roadway. Officers Cicero and Dunn notified dispatch of the stop and within a matter of minutes the Defendant, Daniel Moynahan ("Officer Moynahan"), along with

1

Officers T. Ellison, J. Bienvenue, and C. Lariviere, arrived on the scene to assist.

Officer Cicero exited his cruiser and approached the driver's side of the vehicle.  Officer Dunn exited his cruiser and approached the passenger side of the vehicle.  Officer Cicero made contact with Ms. Robinson.  Ms. Robinson provided Officer Cicero with her driver's license and the rental agreement for the vehicle.  As Officer Cicero spoke with Ms. Robinson, Officer Dunn illuminated the interior of the vehicle with his flashlight.  Neither Officer Cicero nor Officer Dunn observed any weapons or contraband inside the vehicle. Neither Officer Cicero nor Officer Dunn observed any of the occupants of the vehicle make any movements that made them concerned for their safety.  Officers Cicero and Dunn returned to their cruisers to check Ms. Robinson's documentation.

After determining that Ms. Robinson was not listed as an operator on the rental agreement and that the agreement had previously expired, Officer Cicero returned to the driver's window of the vehicle and Officer Dunn returned to the passenger side.  Officer Moynahan joined Officer Dunn on the passenger side of the vehicle and the remaining three officers positioned themselves around the vehicle.  All six officers were armed with service pistols.  As Officer Cicero was explaining to Ms. Robinson that she would be issued a citation and the car would be towed, Officers Dunn and Moynahan asked the Plaintiff for his identification, which he provided.   Officers Dunn and Moynahan returned to their cruisers.   Officers Dunn and Moynahan denied asking the Plaintiff for his identification at this time.

A few minutes later, Officers Dunn and Moynahan returned to the vehicle, opened the rear passenger door and forcibly pulled the Plaintiff out of the vehicle by the arm.  Officer Moynahan claimed that they removed the Plaintiff from the car because he observed the Plaintiff lean forward and towards the center of the vehicle.  Officer Dunn claimed that he observed the

Plaintiff shuffle from left to right in his seat and reach towards the door jam area. Officers Dunn and Moynahan handcuffed the Plaintiff with his arms behind his back. Officers Dunn and Moynahan searched the Plaintiff's pockets and emptied the contents into the backseat of the vehicle. During the search of the Plaintiff's person, Officer Moynahan manipulated the Plaintiff's genitals with his hand. Officer Moynahan denied manipulating the Plaintiff's private area, but Officer Dunn acknowledged that manipulation occurred. The Plaintiff felt violated and immediately questioned why Officer Moynahan had grabbed his genitals. The Plaintiff verbally protested the way he was being treated. Officer Moynahan told the Plaintiff to "shut up" and shoved him against the side of the vehicle.

Officer Dunn led the Plaintiff to his cruiser. Officer Dunn punched the Plaintiff in the face while he was still handcuffed with his arms behind his back. Officer Dunn denied punching the Plaintiff in the face. However, the booking photo taken shortly thereafter shows blood emanating from the Plaintiff's lip. The medical records from the jail also document a lacerated lip. The Defendants offered no rational explanation for how the Plaintiff's lip became lacerated. The punch caused the Plaintiff to fall face-first onto the rear floorboard of the police cruiser. Officers Dunn and Moynahan then proceeded to stomp on the Plaintiff's back with their boots. The Defendants denied stomping the Plaintiff in the back, but the medical records from the jail document pain, spasm, and bruising to the Plaintiff's back and flank.

Officers Cicero and Dunn transported the Plaintiff in their cruiser to the Springfield Police Station for booking. The Defendants claim that they arrested the Plaintiff because he kicked Officer Dunn in the shin during the course of the patfrisk. However, Officer Dunn suffered no injury, received no medical treatment, and missed no time from work. During the booking process, the Plaintiff asked to speak to a captain to report how he had been assaulted by

3

the Defendants.  The booking officer, Sergeant Philip McBride, ignored the Plaintiff's repeated requests to report the assault to a captain.

The Defendants sought a criminal complaint against the Plaintiff, charging him with one count of Assault and Battery on a Police Officer and one count of Resisting Arrest.  Later that day on August 26, 2015, Complaint Docket No. 1523CR5954 was issued and the Plaintiff was arraigned before the Springfield District Court.  At arraignment, bail was set in the amount of $10,000.00 over the objection of the Plaintiff.  The Plaintiff was unable to post said bail and was consequently held at the Hampden County Corrections Center in Ludlow, Massachusetts.  On September 25, 2015, the court lowered the Plaintiff's bail to $1,000.00, which the Plaintiff posted that day after being incarcerated for a period of thirty (30) days.  From August 2, 2016 through August 3, 2016, a jury trial was conducted in the Springfield District Court.  The jury returned a verdict of not guilty on all counts.

## ARGUMENT

I.   THE COURT SHOULD GRANT THE PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW BECAUSE NO REASONABLE JURY WOULD HAVE A LEGALLY SUFFICIENT EVIDENTIARY BASIS TO FIND IN FAVOR OF THE DEFENDANTS.

A party is entitled to judgment as a matter of law when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue".  **Fed. R. Civ. P.** 50(a)(1).  "The granting of a directed verdict for plaintiff is a chancy affair.  However, where appropriate it should be granted."  Hall v. Ochs, 817 F.2d 920, 923 (1st Cir. 1987) (granting plaintiff's motion for directed verdict on unlawful arrest count in § 1983 action).

In the case at bar, no reasonable jury would have a legally sufficient basis to find (1) that the Defendants had an objectively reasonable suspicion that the Plaintiff had committed a crime

or was engaged in criminal activity at the moment they asked him for his identification, (2) that the Defendants had an objectively reasonable suspicion that the Plaintiff was armed and dangerous and posed a safety risk at the moment they removed him from the vehicle and searched him, (3) that the patfrisk conducted by Officer Moynahan was within the permissible scope of a patfrisk for weapons, (4) that the arrest of the Plaintiff was supported by probable cause, and (5) that the Defendants' use of force against the Plaintiff was reasonable.

A.    The Defendants Lacked Reasonable Suspicion That The Plaintiff Had Committed A Crime Or Was Engaged In Criminal Activity At The Moment They Asked Him For His Identification.

A motor vehicle stop conducted by a police officer constitutes a seizure of both the driver and passengers of the vehicle for purposes of both the Fourth Amendment to the United States Constitution ("Fourth Amendment') and Article 14 of the Massachusetts Declaration of Rights ("Article 14").  United States v. Brown, 500 F.3d 48, 53 (1st. Cir. 2007) citing Delaware v. Prouse, 440 U.S. 648, 653 (1979); Brendelin v. California, 551 U.S. 249, 256-257 (2007) (holding passenger in vehicle stopped for traffic violation is seized and may challenge constitutionality of stop); Commonwealth v. Rodriguez, 472 Mass. 767, 779 (2015) (Cordy, J., dissenting) citing Commonwealth v. Rodriguez, 430 Mass. 577, 579 (2000).

Under the Fourth Amendment, a police officer may ask the occupants of a stopped motor vehicle for their identification.  United States v. Fernandez, 600 F.3d 56, 61-63 (1st Cir. 2010). However, Article 14 affords greater protections in this regard.  Under Article 14, a police officer "may not interrogate passengers in the car unless the [officer] has a 'reasonable suspicion, grounded in specific, articulable facts,' that a particular passenger in the car is involved in criminal activity or 'engaged in other suspicious conduct.'"  Commonwealth v. Alvarez, 44 Mass. App. Ct. 531, 534 (1998) quoting Commonwealth v. Torres, 424 Mass. 153, 158 (1997).

In <u>Commonwealth v. Alvarez</u>, a State Police trooper stopped the defendants' vehicle at approximately 9:20 P.M. for speeding.  44 Mass. App. Ct. at 531.  The trooper asked the driver for his license and registration, which he produced.  <u>Id.</u> at 532.  After receiving the driver's license and registration, the trooper then asked the front seat passenger for his identification.  <u>Id.</u> The trooper ran both licenses through his computer and determined that both were valid.  <u>Id.</u> The trooper noticed, however, that the information contained in the two licenses seemed to be mirror images of one another.  <u>Id.</u>  The trooper returned to the car and began to question the defendants further.  <u>Id.</u>  As he questioned the defendants further, the trooper noticed certain indicia of narcotics use and smuggling inside the vehicle.  <u>Id.</u> at 533.  The trooper ordered the defendants to exit the vehicle and called for a trained narcotics dog.  <u>Id.</u>  The dog alerted on the car, prompting the trooper to detain the defendants and search the vehicle, leading to the discovery of a kilogram of cocaine.  <u>Id.</u>

The Appeals Court held that the trooper's request for the passenger's identification was unlawful, and therefore, the cocaine seized was subject to suppression under the "fruit of the poisonous tree" doctrine.  <u>Id.</u> at 534-536.  In so holding, the Appeals Court cited the well-established rule under Article 14 that a police officer "may not interrogate passengers in the car unless the [officer] has a 'reasonable suspicion, grounded in specific, articulable facts,' that a particular passenger in the car is involved in criminal activity or 'engaged in other suspicious conduct.'"  <u>Id.</u> at 534 <u>quoting</u> <u>Torres</u>, 424 Mass. at 158.  The Appeals Court reasoned that there was no "plausible, non-investigatory reason for [the trooper] to have asked [the passenger] for identification as a matter of routine practice."  <u>Id.</u>  The Appeals Court further reasoned that the Trooper did not have any reason to fear for his own safety or to suppose that the passenger was in need of assistance.  <u>Id.</u> at 534-535 <u>citing</u> <u>Commonwealth v. Vanderlinde</u>, 27 Mass. App. Ct.

1103, 1104 (1989); Commonwealth v. King, 389 Mass. 233, 242 (1983). The Appeals Court concluded that "[i]nterrogation of passengers in a car stopped for a traffic offense, without an objective basis for suspicion that the passenger is involved in criminal activity, slips into the dragnet category of questioning that art. 14 prohibits." Id. at 535 citing Torres, 424 Mass. at 158-161.[1]

Both the Plaintiff and Ms. Tucker testified that the Defendants asked the Plaintiff for his identification prior to removing him from the vehicle. Although Ms. Robinson did not so testify, she was speaking with Officer Cicero at the time regarding the citation and tow, and it is understandable that she may not have heard the request for the Plaintiff's identification. Officer Dunn admitted that he asked the Plaintiff for his identification, although he claimed he made this request when the Plaintiff was locked in the rear of the police cruiser. Officer Dunn's testimony defies reason, however, as it would have been impossible for the Plaintiff to pass anything to Officer Dunn while he was positioned face down, with his hands handcuffed behind his back, in the rear of the locked police cruiser.

Similar to the trooper in Alvarez, Officers Dunn and Moynahan had no objective basis for suspicion that the Plaintiff had committed a crime or was engaged in criminal activity. They had not received a report of any criminal activity associated with the vehicle and had not

---

[1] The Commonwealth argued that G.L. c. 85, § 16 authorized the trooper's request for the passenger's identification. Alvarez, 44 Mass. App. Ct. at 535-536. Section 16 provides that "[e]very person shall while driving or in charge of or occupying a vehicle during the period from one hour after sunset to one hour before sunrise, when requested by a police officer, give his true name and address." G.L. c. 85, § 16. The Appeals Court dismissed the Commonwealth's argument reasoning that the request for "identification, i.e. documents, went significantly beyond simply asking an occupant of a vehicle to give her or his true name and address." Alvarez, 44 Mass. App. Ct. at 535-536. Although not directly ruling on the constitutionality of the statute, the Appeals Court observed that "[w]ere § 16 read to permit dragnet interrogation of the sort we have described as prohibited, questions about the constitutionality of that statute would necessarily arise." Alvarez, 44 Mass. App. Ct. at 535.

observed the occupants of the vehicle engage in any suspected criminal activity.  The Defendants were confronted with a routine traffic stop.  Ms. Robinson had provided them with a valid driver's license and the rental agreement for the vehicle.  The Defendants had reviewed the rental agreement and determined that a citation should issue and the car should be towed.  However, instead of issuing the citation and allowing Ms. Robinson, the Plaintiff, and the other two occupants to gather their belongings and leave the vehicle, the Defendants chose to unreasonably prolong the motor vehicle stop by demanding that the Plaintiff produce his identification.

Therefore, because no reasonable jury would have a legally sufficient basis to find that the Defendants had an objectively reasonable suspicion that the Plaintiff had committed a crime or was engaged in criminal activity at the moment they asked him for his identification, this Honorable Court should grant the Plaintiff's motion for directed verdict with respect to Count II of the Plaintiff's Complaint alleging unlawful seizure under Article 14.

B.    The Defendants Lacked Reasonable Suspicion That The Plaintiff Was Armed And Dangerous And Posed A Safety Risk At The Moment They Removed Him From The Vehicle And Searched Him.

Under the Fourth Amendment, a police officer may lawfully order the occupants of a motor vehicle to exit the vehicle while it is stopped for a traffic violation.  United States v. Dardy, 128 F.Supp.3d 400, 409 (D. Mass. 2015) citing Maryland v. Wilson, 519 U.S. 408, 410, 414-415 (1997); Michigan v. Long, 463 U.S. 1032, 1047-1048 (1983); United States v. McGregor, 650 F.3d 813, 820 (1st Cir. 2011).  If an occupant refuses to obey an exit order, the police may use some degree of reasonable force to remove the occupant from the vehicle. Id. at 409-410.  Physical contact, in the form of a brief frisk or pat-down of the outer clothing, may be a permissible next step only if the officer has a reasonable suspicion, based upon specific and articulable facts, that the person detained is armed and dangerous.  United States v. Romain, 393

F.3d 63, 71 (1st Cir. 2004).  The test is whether a reasonably prudent person in the circumstances would be warranted in the belief that his or her safety or that of others was in danger.  United States v. Starks, 301 F.Supp.2d 76, 85 (D. Mass. 2004) quoting Terry v. Ohio, 392 U.S. 1, 27 (1968).

Under Article 14, however, when conducting a motor vehicle stop, the police may order the occupants out of the vehicle only if "(1) police are warranted in the belief that the safety of the officers or others is threatened; (2) police have reasonable suspicion of criminal activity; or (3) police are conducting a search of the vehicle on other grounds."  Commonwealth v. Torres-Pagan, SJC-12697, 2020 WL 469619 at *3 (Mass. January 29, 2020) (Slip Opinion) citing Commonwealth v. Amado, 474 Mass. 147, 151-152 (2016).

> Thus, in the absence of reasonable suspicion of a crime or justification to search the vehicle on other grounds, an exit order is justified during a traffic stop if officers have a reasonable suspicion of a threat to safety. A lawful patfrisk, however, requires more; that is, police must have a reasonable suspicion, based on specific articulable facts, that the suspect is ***armed and dangerous***.  Id. citing Commonwealth v. Martin, 457 Mass. 14, 19 (2010) (emphasis added).

"A general statement that the suspect seemed to be 'nervous' or even 'very nervous' falls short of a specific articulable fact or reason for an exit order."  Commonwealth v. Gonsalves, 46 Mass. App. Ct. 186, 189 (1999) citing Commonwealth v. Williams, 46 Mass. App. Ct. 181, 184-185 (1999).  "A hunch that the suspect is involved with something unsavory does not provide a basis for an exit order or search."  Id. citing Commonwealth v. Bartlett, 41 Mass. App. Ct. 468, 472 (1996).  A suspicion of drug activity alone is insufficient to establish a reasonable apprehension of officer safety.  Commonwealth v. Washington, 449 Mass. 476, 482-483 (2007) (refusing to adopt blanket rule that all persons suspected of drug activity are to be presumed armed and dangerous for constitutional purposes).

The fact that a traffic stop takes place in a high crime area is itself insufficient to justify

an exit order because many honest, law-abiding citizens live and work in high crime areas. Commonwealth v. Santos, 65 Mass. App. Ct. 122, 125 (2005); Commonwealth v. Hooker, 52 Mass. App. Ct. 683, 687 (2001).  Innocent, non-threatening movements, cannot justify an exit order, for a person is not required to sit absolutely motionless in a stopped vehicle.  Santos, 65 Mass. App. Ct. at 125 (holding exit order and patfrisk unlawful where driver sat up from reclined position and leaned forward during traffic stop in high crime area late at night where number of occupants did not outnumber police) quoting Hooker, 52 Mass. App. Ct. at 686 (holding exit order and patfrisk unlawful where defendant moved shoulders back and forth and appeared to place something on seat during traffic stop in high crime area late at night where number of police officers outnumbered occupants of vehicle).  Likewise, a lunge or other furtive gesture is usually insufficient, by itself, to render a search reasonable, although such movements may be considered in determining the reasonableness of an exit order and patfrisk.  Commonwealth v. Holley, 52 Mass. App. Ct. 659, 663 (2001) (holding exit order and patfrisk unlawful where driver leaned and reached towards passenger visor during traffic stop in high crime area late at night where number of police officers outnumbered occupants of vehicle) quoting Commonwealth v. Concepcion, 10 Mass. App. Ct. 613, 616 n.2 (1980).  Additionally, whether the police were outnumbered by the occupants of the vehicle is a relevant factor in determining whether the officers had an objectively reasonable fear for their safety.  Holley, 52 Mass. App. Ct. at 665 citing Commonwealth v. Torres, 433 Mass. 669. 670-671 (2001).

In the case at bar, Officer Dunn claimed that he observed the Plaintiff shuffle from left to right in his seat and reach from his shorts towards the door jam area.  This testimony is refuted by not just the testimony of the Plaintiff, Ms. Robinson, and Ms. Tucker, all of whom denied the Plaintiff made any such movements, but also by Officer Cicero, who observed no such

movements, and Officer Moynahan, who merely observed the Plaintiff lean forward and towards the center of the vehicle.  The weight of the evidence rests strongly in favor of the Plaintiff.  Notwithstanding, even if Officer Dunn's testimony were to be credited, it would not justify an exit order and patfrisk.

At the time of the exit order, Officer Dunn had already made a previous trip to the car, during which he illuminated the interior of the vehicle and did not observe any weapons or any movements by the occupants that raised any safety concerns.  At the time of the exit order, the vehicle was surrounded by six armed police officers, who outnumbered the Plaintiff and the three females.  Officer Dunn never saw the Plaintiff holding a weapon.  He never saw the Plaintiff placing any items in his pants after making the supposed reach towards the door jam.  A search of the door jam revealed nothing.  Consequently, even if a search of the door jam area were justified, Officer Dunn had no reason to suspect that any weapons would be found in the Plaintiff's waistband area, or that the Plaintiff posed a danger to any of the six armed police officers who were keeping a watchful eye over the car.

Therefore, because no reasonable jury would have a legally sufficient basis to find that the Defendants had an objectively reasonable suspicion that the Plaintiff was armed and dangerous and posed a safety risk at the moment they removed him from the vehicle and searched him, this Honorable Court should grant the Plaintiff's motion for directed verdict with respect to Counts I and II of the Plaintiff's Complaint alleging unlawful seizure under the Fourth Amendment and Article 14.

C.    The Patfrisk Conducted By Officer Moynahan Fell Outside The Permissible Scope Of A Patfrisk For Weapons.

Under both the Fourth Amendment and Article 14, the scope of a patfrisk "cannot be general," but rather must be "confined to what is minimally necessary to learn whether the

suspect is armed and to disarm him should weapons be discovered." Commonwealth v. Wilson, 441 Mass. 390, 396 (2004) citing Terry v. Ohio, 392 U.S. 1, 29-30 (1968).  Under the so-called "plain-feel doctrine,"  "a police officer may . . . seize nonthreatening contraband discovered during a *Terry*-type frisk if the 'police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity [as contraband] immediately apparent.'" Id. quoting Minnesota v. Dickerson, 508 U.S. 366, 375 (1993); see also Commonwealth v. Osborne, 62 Mass. App. Ct. 445, 449 (2004).  "If the officer must *manipulate* or otherwise further physically explore the concealed object in order to discern its identity, then an unconstitutional search has occurred." Wilson, 441 Mass. at 396 citing Dickerson, 508 U.S. at 378-379 (emphasis added).

The Plaintiff testified that during the course of the patfrisk, Officer Moynahan firmly grabbed his genitals, causing the Plaintiff to feel violated and verbally protest.  Although Officer Moynahan denied doing anything more than a routine pat down, Officer Dunn, who was standing right next to Officer Moynahan and observed the patfrisk, testified that Officer Moynahan actually manipulated the Plaintiff's groin area with his hands.  In light of Officer Dunn's corroborating testimony, the weight of the evidence rests strongly in favor of the Plaintiff.

Therefore, because no reasonable jury would have a legally sufficient basis to find that the patfrisk of the Plaintiff's crotch area conducted by Officer Moynahan was within the permissible scope of a patfrisk for weapons, this Honorable Court should grant the Plaintiff's motion for directed verdict with respect to Counts I, II, and VII of the Plaintiff's Complaint alleging unlawful search and seizure under the Fourth Amendment and Article 14 and assault and battery under Massachusetts common law.

D.      The Defendants' Arrest Of The Plaintiff Was Not Supported By Probable Cause.

Police may not place an individual under arrest without an arrest warrant unless they have probable cause to believe that the individual has committed a crime.  Devenpeck v. Alford, 543 U.S. 146, 152 (2004) citing United States v. Watson, 423 U.S. 411, 417-424 (1976).  The test for determining whether probable cause existed at the time of arrest is an objective one.  See Logue v. Dore, 103 F.3d 1040, 1044 (1st Cir. 1997).  Probable cause is said to exist when the facts within the arresting officer's knowledge at the time of the arrest are sufficient to warrant an ordinarily prudent officer to conclude that a crime had been, or was being committed.  Id.

Officers Dunn and Moynahan claimed that they decided to arrest the Plaintiff because he kicked Officer Dunn in the shin while they were placing him in handcuffs.  The Plaintiff denied ever kicking Officer Dunn.  The Plaintiff's testimony was corroborated by the testimony of Ms. Tucker and Ms. Robinson, both of whom testified that the Plaintiff never kicked Officer Dunn.  Furthermore, despite claiming to having been kicked hard in the shin with a shod foot, a dangerous weapon nonetheless, Officer Dunn incurred no injury whatsoever, not even the slightest bruising or swelling.  Of course, were Officer Dunn's testimony true, one would expect there to be some visible evidence of injury.  In light of the testimony of Ms. Robinson and Ms. Tucker and the absence of any of physical injury to Officer Dunn's shin, the weight of the evidence rests strongly in favor of the Plaintiff.

Therefore, because no reasonable jury would have a legally sufficient basis to find that the arrest of the Plaintiff was supported by probable cause, this Honorable Court should grant the Plaintiff's motion for directed verdict with respect to Counts I and II of the Plaintiff's Complaint alleging unlawful arrest, Count III alleging false imprisonment, Count IV alleging false arrest,

Counts VIII and IX alleging malicious prosecution, and Count X alleging abuse of process under the Fourth Amendment, Article 14, and Massachusetts common law.

E.    <u>The Defendants' Use Of Force Against The Plaintiff Was Excessive And Unreasonable</u>.

Both the Fourth Amendment and Article 14 are violated where an officer uses excessive and unreasonable force in effecting an arrest.  <u>See</u> <u>Raiche v. Pietroski</u>, 623 F.3d 30, 36 and 40 (1st Cir. 2010) <u>citing</u> <u>Graham v. Connor</u>, 490 U.S. 386, 394-395 (1989).   When analyzing a claim for excessive force, the court must determine "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation".   <u>Graham</u>, 490 U.S. at 397.   In making such a determination, the court must consider the totality of the circumstances.  <u>Id.</u> at 396.   Several factors for the court to consider include "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight".  <u>Id.</u> <u>citing</u> <u>Tennessee v. Garner</u>, 471 U.S. 1, 8-9 (1985).  A police officer's unprovoked attack upon an individual who presents no threat constitutes an unreasonable use of force.  <u>See</u> <u>Raiche</u>, 623 F.3d at 39 (holding defendant police officer not entitled to qualified immunity on excessive force claim where he tackled plaintiff who posed no threat and was not fleeing); <u>Rosencranz v. Freeman</u>, No. 14-13050-JGD, 2017 WL 1217112, *12 (D. Mass. March 31, 2017) (denying defendant officer's motion for summary judgment on excessive force claim where plaintiff alleged defendant chest-bumped him, slammed him onto hood of car, and pulled his pants down without provocation and/or probable cause to arrest).  It is unreasonable for a police officer to use physical force on a person who has been arrested and restrained, who is securely under the control of the police, and who is not attempting to escape.  <u>See</u> MICHAEL AVERY ET AL., POLICE MISCONDUCT:

Case 3:18-cv-30039-MGM   Document 101   Filed 02/20/20   Page 15 of 17

LAW AND LITIGATION § 12:23 (2002) <u>citing</u> <u>Cox v. Treadway</u>, 75 F.3d 230, 234 (6th Cir. 1996).

The Plaintiff testified that Officer Dunn punched him in the face while he was handcuffed with his hands behind his back.  The Plaintiff further testified that once he was down, Officers Dunn and Moynahan stomped his back with their boots.  The Plaintiff was not attempting to flee and posed no threat to any of the six armed police officers surrounding him at the time he was assaulted.  The Plaintiff's testimony was corroborated by his booking photograph, which clearly shows a bloody lip, and the medical records from the jail, which document a lip laceration and pain, spasm, and bruising to the Plaintiff's back and flank. Although Officer Dunn denied punching the Plaintiff, neither he nor any of the other officers involved had any rational explanation for the Plaintiff's injuries.

Therefore, because no reasonable jury would have a legally sufficient basis to find that the Defendants' use of force against the Plaintiff was reasonable, this Honorable Court should grant the Plaintiff's motion for directed verdict with respect to Counts V, VI, and VII of the Plaintiff's Complaint alleging excessive use of force and assault and battery under the Fourth Amendment, Article 14, and Massachusetts common law.

II.   THE DEFENDANTS ARE NOT ENTITLED TO THE DEFENSE OF QUALIFIED IMMUNITY.

The defense of qualified immunity shields government officials performing discretionary functions from liability under the Federal Civil Rights Act, 42 U.S.C. § 1983 ("§ 1983") and the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, §§ 11H and 11I ("MCRA") for conduct that is objectively reasonable.  <u>See</u> <u>Campbell v. Casey</u>, 166 F.Supp.3d 144, 148 (D. Mass. 2016) <u>citing</u> <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982); <u>see also</u> <u>Raiche v. Pietroski</u>, 623 F.3d 30, 40 (1st Cir. 2010) (noting MCRA claims subject to same standard of immunity for

police officers as claims under § 1983) <u>citing</u> <u>Duarte v. Healy</u>, 405 Mass. 43, 46 (1989).  To determine whether qualified immunity applies to a given case, the Court must "determine:  (1) whether a public official has violated a plaintiff's constitutionally protected right; and (2) whether the particular right that the official has violated was clearly established at the time of the violation."  <u>Raiche</u>, 623 F.3d at 35 <u>citing</u> <u>Estrada v. Rhode Island</u>, 594 F.3d 56, 62-63 (1st Cir. 2010).  In applying the second prong, the Court "must consider two subsidiary issues:  (a) the clarity of the law in general at the time of the alleged violation; and (b) the clarity of the law as applied to the case – in other words, whether a reasonable person in the defendant's shoes 'would have understood that his conduct violated the Plaintiff's constitutional rights'".  <u>Id.</u> at 35-36 <u>quoting</u> <u>Maldonado v. Fontanes</u>, 569 F.3d 263, 269 (1st Cir. 2009).

As discussed in Part I <u>supra</u>, the rights (1) to be free from seizure unsupported by reasonable suspicion, (2) to be free from arrest unsupported by probable cause, and (3) to be free from excessive force are protected by both the Fourth Amendment and Article 14.  <u>Supra</u> Part I. These basic rights are "clearly established," having been recognized by the United States Supreme Court and the Massachusetts Supreme Judicial Court for decades.  <u>See</u> <u>Niles v. Town of Wakefield</u>, 172 F.Supp.3d 429, 442-444 (D. Mass. 2016) (rejecting defendant officers' qualified immunity defense in light of well-established principles of <u>Terry</u> and standard for Fourth Amendment seizure); <u>Nuon v. City of Lowell</u>, 768 F. Supp. 2d 323, 335 (D. Mass. 2011) (holding defendant officer not entitled to qualified immunity and granting summary judgment in favor of plaintiff on unlawful arrest count); <u>Raiche</u>, 623 F.3d at 40 (holding officer not entitled to qualified immunity for excessive force claims brought under § 1983 and MCRA).  Therefore, this Honorable Court should rule that the Defendants are not entitled to the defense of qualified immunity.

CONCLUSION

For the reasons stated herein, the Plaintiff prays that this Honorable Court grant the Plaintiff's Motion For Judgment As A Matter of Law.

Respectfully Submitted,


Dated: February 20, 2020                    By:_____
                                            Peter Alexander Slepchuk, BBO#: 682078
                                            Attorney for the Plaintiff
                                            155 Maple St., Suite 405
                                            Springfield, MA 01105
                                            Tel: (413) 736-3649; Fax: (413) 747-9022
                                            E-mail: peter.alexander@slepchulaw.com


CERTIFICATE OF SERVICE

I, Peter Alexander Slepchuk, hereby certify that on this 20th day of February, 2020, I served this document upon counsel for the Defendants and all registered parties via the ECF Notice of Electronic Filing (NEF) system.

Dated: February 20, 2020                    /s/ *Peter Alexander Slepchuk*
                                            Peter Alexander Slepchuk